IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Integon General Insurance Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 7:09-cv-03045-JMC |
| | ) | |
| v. | ) | **OPINION & ORDER** |
| | ) | |
| Joseph Bartkowiak, Tonya Wyatt, as GAL | ) | |
| for Lily Beth Bartkowiak, and Automated | ) | |
| Door Products, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Integon General Insurance Corporation ("Plaintiff") filed this action for a Declaratory Judgment, under 28 U.S.C. § 2201, seeking clarification of the extent, if any, of its liabilities pursuant to an insurance policy that it issued to Defendant Automated Door Products, Inc. ("ADP"). This court has jurisdiction under 28 U.S.C. § 1332. Pending before the court is Plaintiff's motion for judgment on the pleadings [Entry # 19]. Having carefully considered the motions, the pleadings, and the applicable law, the court **GRANTS** Plaintiff's Motion for Judgment on the Pleadings.

**FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are not in dispute.[1] On January 11, 2009, Defendant Joseph Bartkowiak ("Mr. Bartkowiak") used a pickup truck owned by ADP to transport himself, his

---

[1] Defendant Tonya Wyatt, as Guardian Ad Litem for Lily Beth Bartkowiak ("Ms. Wyatt" and "Lily Beth" respectively), admits their truth. *See* [Entry #6]. Mr. Bartkowiak and ADP are deemed to have admitted their truth by their default in responding to the Complaint. *See Ryan v. Homecomings Financial Network*, 253 F.3d 778, 780 (4th Cir. 2001) (holding that upon a

1

daughter Lily Beth, and his son to an awards banquet at which the son was awarded a trophy. When leaving the banquet, Mr. Bartkowiak, Lily Beth, and his son rode in the front seat of the truck. The trophy was placed in the backseat. When the three arrived at Mr. Bartkowiak's home, the truck was parked, and the three exited the truck. Lily Beth exited the truck through the passenger side door. At some point in time, she reached into the rear seat area of the truck to retrieve a personal item. While attempting to retrieve the item, Lily Beth was struck in the eye by the trophy and sustained injuries. At the time of the incident, the truck was insured under a policy of insurance issued by Plaintiff to ADP. Mr. Bartkowiak was listed as a designated driver in the insurance policy declarations.

As a result of the incident, on or about January 11, 2009, Defendant Tonya Wyatt, as GAL for Lily Beth, filed a lawsuit against ADP and Mr. Bartkowiak, C/A No. 09-CP-42-4536, in the Court of Common Pleas for Spartanburg County (the "Tort Suit"), seeking recovery for eye injuries sustained by Lily Beth. Lily Beth's injuries, for which she seeks compensation in the Tort Suit, are allegedly the result of moving, loading, or unloading of property from the truck. On November 11, 2009, Plaintiff filed its Complaint seeking a Declaratory Judgment under 28 U.S.C. § 2201 with this court.

On February 2, 2010, Plaintiff filed a Request for Entry of Default against ADP and Mr. Bartkowiak. [Entry #14]. On February 3, 2010, the Clerk of Court filed an Entry of Default. [Entry #16]. On May 24, 2010, ADP and Mr. Bartkowiak filed an Answer. [Entry #23]. On June 3, 2010, the Honorable Henry F. Floyd filed a Text Order noting that ADP and Mr. Bartkowiak's untimely Answer failed to respond to the Entry of Default or demonstrate good

---

defendant's default, that defendant "admits the plaintiff's well pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established . . .") (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975)).

cause to excuse the Default as required by Fed. R. Civ. P. 55(c). [Entry #29]. Judge Floyd then instructed ADP and Mr. Bartkowiak to cure the deficiency before making further filings with the court. There is no indication in the record that ADP or Mr. Bartkowiak ever cured the deficiency. On August 24, 2010, this case was reassigned to the undersigned. [Entry #31].

## STANDARD OF REVIEW

Parties are permitted to make a motion for judgment on the pleadings under Rule 12 (c) of the Federal Rules of Civil Procedure "[a]fter the pleadings are closed - but early enough not to delay trial . . . ." Fed. R. Civ. P. 12(c). A motion to dismiss under Fed. R. Civ. P. 12(c) is designed to "dispos[e] of cases in which there is no substantive dispute that warrants the litigants and the court proceeding further . . . ." 5C Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure § 1368* (3d ed. 2010).

Under a Rule 12(c) motion, "only the pleadings are considered . . . ." *A.S. Abell Co. v. Baltimore Typographical Union*, 338 F.2d 190, 193 (4th Cir. 1964). The court may, however, consider the documents and exhibits attached to and incorporated into the pleadings themselves. *See Eagle Nation, Inc. v. Market Force, Inc.*, 180 F. Supp. 2d 752, 754 (E.D.N.C. 2001); *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452-53 (7th Cir. 1998).

A district court, in reviewing a Rule 12(c) motion, "appl[ies] the same standard . . . as for motions made pursuant to Rule 12(b)(6)." *Burbach Broad. Co. v. Elkins Radio Corp.,* 278 F.3d 401, 405-06 (4th Cir. 2002) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). "To survive a Rule 12(b)(6) motion, a complaint's 'factual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to

3

relief that is plausible on its face.'" *Demetry v. Lasko Prod. Inc.,* 284 Fed. Appx. 14, 15 (4th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-57 (2007)). A motion for judgment on the pleadings should be granted only if "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006) (quoting *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000)). When a court reviews a motion for judgment on the pleadings, it should "construe the facts and reasonable inferences . . . in the light most favorable to the [nonmoving party]." *Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir. 1997). Thus, "[t]he court must accept all well pleaded factual allegations in the non-moving party's pleadings as true and reject all contravening assertions in the moving party's pleadings as false." *John S. Clark Co., Inc. v. United National Ins. Co.,* 304 F. Supp. 2d 758, 763 (M.D.N.C. 2004) (citing 5A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1368 at 520 (2d ed. 1990)). "Essentially, a [movant] may not prevail on a motion for judgment on the pleadings if there are pleadings that, if proved, would permit recovery for the [non-movant]." *BET Plant Services, Inc. v. W.D. Robinson Electric Co., Inc.*, 941 F. Supp. 54, 55 (D.S.C. 1996).

## LAW/ANALYSIS

In a declaratory judgment, a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C.A. § 2201(a) (West 2010); *See also Pacific Mut. Life Ins. Co. of California v. Rhame*, 32 F. Supp. 59, 61 (D.S.C. 1940).

"Insurance policies are subject to general rules of contract construction. Courts must enforce, not write, contracts of insurance and we must give policy language its plain, ordinary and popular meaning." *Sloan Construction Co., Inc. v. Central National Ins. Co. of Omaha*, 269 S.C. 183, 236 S.E.2d 818, 819 (1977). "Where language used in an insurance contract is ambiguous, or where it is capable of two reasonable interpretations, that construction which is most favorable to the insured will be adopted." *Edens v. South Carolina Farm Bureau Mutual Insurance Co.,* 279 S.C. 377, 379**,** 308 S.E.2d 670, 671 (1983). "However, in cases where there is no ambiguity, contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood in their plain, ordinary and popular sense." *Garrett v. Pilot Life Ins. Co.,* 241 S.C. 299, 304, 128 S.E.2d 171, 174 (1962).

I.  **RELEVANT POLICY LANGUAGE**

At issue in this case is whether ADP and Mr. Bartkowiak are an "insured" and whether the alleged injury is covered under the Integon Insurance Policy ("Policy") [Entry #1-2]. Plaintiff's Policy defines the relevant terms as follows:

> **DEFINITIONS USED THROUGHOUT THIS POLICY**
> 2.  **"You"** and **"your"** mean:
>     a.  if the policy is issued in the name of an individual, the person shown in the Declarations Page as the named insured; or
>     b.  the organization shown in the Declarations Page as the named insured.
> 5.  **"Auto"** means a land motor vehicle or **trailer** designed for travel on public roads. It does not include **mobile equipment.**
> 7.  **"Accident"** means a sudden, unexpected and unintended event that causes **bodily injury** or **property damage.**
> 10. **"Occupying"** means in, on, getting into, getting off, or getting out of.

[Entry #1-2, at 12]. Part I of the Policy is entitled "Liability to Others," and it reads in relevant part:

> **INSURING AGREEMENT: COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE**
> **We** will pay on behalf of an **insured** damages for **bodily injury** or **property damage** for which any **insured** becomes legally responsible because of an **auto accident.**

[Entry #1-2, at 14]. In addition, Part I of the Policy includes a section that defines terms applicable only to that part:

> **ADDITIONAL DEFINITIONS USED IN THIS PART ONLY**
> As used in this Part I - LIABILITY TO OTHERS, **"Insured"** means:
> 1. **You** while driving **your insured auto.**
> 2. Any additional driver listed in **your** Declarations Page, but only while driving **your insured auto.**

*Id.* Part I of the Policy also includes exclusions, and the relevant exclusion in this case is 9(d) [Entry #1-2, at 15]. Exclusion 9(d) reads as follows:

> **EXCLUSIONS**
> 9. **Bodily injury** or **property damage** resulting from:
>    d. the movement, loading or unloading of property by anyone who is not **your** employee, a renter or borrower of **your insured auto** or their employee.

*Id.*

The Policy also defines the terms under which Plaintiff would provide uninsured motorist coverage:

> **PART III - UNINSURED MOTORISTS COVERAGE**
> **INSURING AGREEMENT: UNINSURED MOTORISTS COVERAGE**
> If **you** pay a premium for this coverage, **we** will pay damages for **bodily injury** and **property damage** which an **insured** is legally

6

> entitled to recover from the owner or operator of an **uninsured motor vehicle** up to the limit of liability as defined in this Part III - UNINSURED MOTORISTS COVERAGE. The **bodily injury** and **property damage** must be caused by an accident and arise out of ownership, maintenance or use of an **uninsured motor vehicle.**

[Entry #1-2, at 20].

## II. WHETHER ADP AND MR. BARTKOWIAK ARE INSUREDS FOR LIABILITY COVERAGE UNDER THE POLICY

Plaintiff argues there is no liability coverage for the accident because ADP and Mr. Bartkowiak do not qualify as insureds for liability coverage under the terms of the Policy. Under South Carolina law, "'Insured' means the named insured . . . ." S.C. Code Ann. 38-77-30(7) (2009). ADP is listed as the "named insured" on the Policy's Declarations Page. [Entry #1-2, at 2]. Although ADP is the named insured, as an artificial legal entity, ADP cannot drive. For ADP to be an "insured" under the policy, the person driving the vehicle must be acting in his or her capacity as ADP's employee or agent. *See Travelers Ins. Co. v. Roof Doctor, Inc.,* 325 S.C. 614, 615, 481 S.E.2d 451, 452 (Ct. App. 1997) ("A corporation is not a natural person. It is an artificial entity created by law. Being an artificial entity it cannot appear or act in person. It must act in all its affairs through agents or representatives") (citing *State v. Wells*, 191 S.C. 468, 480, 5 S.E.2d 181, 186 (1939)).

In this case, the circumstances of the accident are disconnected from ADP's business or operations. Mr. Bartkowiak was driving, and Lily Beth and the son/brother were using the truck for personal purposes to go to and return from an awards ceremony at which the son received his trophy. The event, and the use of the truck, was wholly disassociated from any business of ADP. While it is not disputed that ADP owned the truck, the Policy does not, by its terms, deem an

7

entity such as ADP to be an "insured" for purposes of liability coverage solely on the basis of ownership. This is consistent with South Carolina law, which does not impose liability upon owners of vehicles involved in accidents solely upon the basis of such ownership. *See Holder v. Haynes*, 193 S.C. 176, 186, 7 S.E.2d 833, 838 (1940) ("The owner of an automobile is not liable for personal injuries caused by [the automobile] merely because of its ownership ….The liability, if any, of the owner of an automobile operated by another rests solely upon the doctrine of respondeat superior") (quoting *Leary v. Virginia-Carolina Bank*, 2 S.E.2d 570 (N.C. 1939)).

In addition, Mr. Bartkowiak does not qualify as an "insured" for liability coverage. The Policy also defines an insured as "[a]ny additional driver listed in **your** Declarations Page, but only while driving **your insured auto**." [Entry #1-2, at 14]. Mr. Bartkowiak is expressly listed as a driver in the declarations. *Id.* at 4. The truck involved is also listed in the declarations and thus meets the definition of "your insured vehicle." *Id*. at 3 and 12. A person qualifies as an insured under this provision, however, "only while driving" the vehicle. *Id.* at 14. As alleged and admitted, at the time of the accident Mr. Bartkowiak had completed his trip, parked the vehicle, and disembarked from the truck along with all his passengers. There is no indication he was "driving" the vehicle, operating the vehicle in any manner, or even in contact with the vehicle as Lily Beth attempted to retrieve her property from the back seat of the truck.

Therefore, neither ADP nor Mr. Bartkowiak qualify as an insured for liability coverage. ADP does not qualify because Mr. Bartkowiak was neither driving the truck nor acting within his capacity as ADP's employee at the time of the alleged incident. Moreover, Mr. Bartkowiak does not qualify as an insured because he was not driving or operating the truck when Lily Beth's injury occurred.

### III. WHETHER LILY BETH'S DAMAGES ARISE OUT OF AN "AUTO ACCIDENT"

South Carolina law establishes the conditions under which an insurer may issue automobile insurance policies:

> An automobile insurance policy may not be issued or delivered in this State to the owner of a motor vehicle or may not be issued or delivered by an insurer licensed in this State upon a motor vehicle then principally garaged or principally used in this State, unless it contains a provision insuring the persons defined as insured against loss from the liability imposed by law for damages **arising out of the ownership, maintenance, or use** of these motor vehicles . . . .

S.C. Code Ann. § 38-77-140(A) (2009) (emphasis added). South Carolina case law interpreting § 38-77-140(A) sets forth a test for determining when the "ownership, maintenance, or use" language gives rise to coverage: "The party seeking coverage must show (1) a causal connection exists between the vehicle and the injury, (2) no act of independent significance breaks the causal link between the vehicle and the injury, **and** (3) the vehicle was being used for transportation purposes at the time of the injury." *Peagler v. USAA Ins. Co.*, 368 S.C. 153, 159-160, 628 S.E.2d 475, 478 (2006) (citing *State Farm Fire & Cas. Co. v. Aytes*, 332 S.C. 30, 33, 503 S.E.2d 744, 745-47 (1998)) (emphasis added). In addition, to establish the first, or causal, element of the *Aytes* test above requires that "(a) the vehicle was an 'active accessory' to the injury; (b) the vehicle was something less than proximate cause but more than the mere site of the injury; **and** (c) the injury was foreseeably identifiable with the normal use of the vehicle." *Id.* at 161, 628 S.E.2d at 480 (emphasis added). A vehicle will not be considered an "active accessory" when it "was not actively used or involved in causing the injury . . ." but "was merely the site of the injury." *Id.* at 164, 628 S.E.2d at 481. Furthermore, there is no causal connection when the

9

injured person was merely an occupant of the vehicle. *See State Farm Fire & Cas. Co. v. Aytes*, 332 S.C. 30, 33, 503 S.E.2d 744, 746 (1998).

Plaintiff argues that Lily Beth's injuries are not the result of an "auto accident" as determined from the Policy. In response, ADP and Mr. Bartkowiak criticize Plaintiff's reliance on cases that establish a test for determining when injuries "aris[e] out of the ownership, maintenance, or use" of an insured vehicle. S.C. Code Ann. § 38-77-140(A) (2009). ADP and Mr. Bartkowiak argue that Plaintiff should instead be relying on cases that interpret the term "auto accidents" which, according to ADP and Mr. Bartkowiak, is not defined in the Policy. According to these Defendants, the Policy is ambiguous because it fails to define "auto accident." But "auto" and "accident" have plain and independent meanings that are clearly defined in the Policy and from which one can easily determine what "automobile accident" means. As a result, the court finds ADP and Mr. Bartkowiak's argument unpersuasive because "auto" and "accident", as they are defined in the Policy, are unambiguous. The significance of these definitions is that although Plaintiff issued the policy to ADP, Mr. Bartkowiak, as one of ADP's employees listed in the declarations, may drive the covered vehicle within the scope of his employment. While doing so, Mr. Bartkowiak, during such "ownership, maintenance, or **use**" of the covered vehicle, may be involved in an "accident," defined in the policy as "a sudden, unexpected and unintended event that causes **bodily injury** or **property damage**." *Id.* (emphasis added); [Entry #1-2, at 12]. Those are the conditions under which Plaintiff might conceivably be liable for coverage. But those conditions are not consistent with the facts of this case. In sum, the cases Plaintiff cites are germane to the issue before us because they govern

10

when liability will arise out of the "ownership, maintenance, and use" of a covered vehicle in accordance with the policy. *Id.*

In addition to ADP's and Mr. Bartkowiak's arguments, Ms. Wyatt argues that the court should rely not on Justice Burnett's majority opinion in *Peagler* but instead on Justice Waller's dissent.[2] Federal courts sitting in diversity must apply and construe the substantive law of the forum state. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 82 (1938). Since the court has diversity jurisdiction over this matter, it has "an obligation to apply the jurisprudence of South

---

[2] In addition to relying on the dissent in *Peagler* in support of her argument that the vehicle was in "use" when the trophy injured Lily Beth, Ms. Wyatt also asks this court to re-certify to the South Carolina Supreme Court the question whether it would be "inclined to follow the language in the [*Peagler*] dissent . . . ." [Entry # 22, at 3, 5]. But this request is based upon "a misconception of the purpose of certification, which is not to permit a party to seek to persuade the state court to change what appears to be present law." *Cantwell v. Univ. of Massachusetts,* 551 F.2d 879, 880 (1st Cir. 1977); 36 *C.J.S. Federal Courts* § 81 (2010) (citing *City of Houston, Tex v. Hill*, 482 U.S. 451 (1987)).

Nevertheless, in the dissenting opinion upon which Ms. Wyatt bases her certification request, Justice Waller argues that removing a loaded shotgun from a pickup truck "arose out of the 'ownership, maintenance, and use' of the pickup truck" because the facts in *Peagler,* in his view, satisfied the three pronged test in *Aytes*. *Peagler,* 368 S.C. 165-67, 628 S.E.2d 481-82. In other words, according to Justice Waller, there was a causal connection between unloading a shotgun and "use" of the vehicle because the shotgun was being removed from the car while the motor was running "in preparation for transportation of the kids to school . . . ." *Id.* at 165, 628 S.E.2d 481. There was also, in his view, no "act of independent significance [that] broke the causal link between the vehicle and the injury." *Id.* at 166, 628 S.E.2d 482. Finally, Justice Waller concludes that the vehicle was being used for transportation purposes because the injured party was sitting in the car at the time of the accident, the engine was running, and she was about to drive her children to school and herself to work. *Id.* at 167, 628 S.E.2d 482. In sum, Justice Waller argues "that the 'ownership, maintenance, or use' of a vehicle includes the loading and unloading of firearms after the vehicle has been used for hunting purposes, a use which is foreseeably identifiable with normal use of the vehicle." *Id.*

S.C. App. Ct. R. 244 governs the certification of "questions of law of this state which may be determinative of the cause then pending in the certifying court when it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court." S.C. App. Ct. R. 244(a) (2009). In addition, under *Grattan v. Board of School Comm'r*, 805 F.2d 1160, 1164 (4th Cir. 1986), "[a] federal court's certification of a question of state law to that state's highest court is appropriate when the federal tribunal is required to address a novel issue of local law which is determinative in the case before it."

The instant case does not present a "novel issue of local law . . ." because *Aytes* controls.

11

Carolina's highest court, the South Carolina Supreme Court." *Private Mortgage Investment Servs. Inc. v. Hotel and Club Associates, Inc.*, 296 F.3d 308, 312 (4th Cir. 2002). Moreover, as a federal court, it must "rule upon state law as it exists and do[es] not surmise or suggest its expansion" - much less ignore it entirely. *Bennett v. Ford Motor Co.*, 236 F. Supp. 2d 558, 563 (D.S.C. 2002).

Therefore, on the admitted facts, the first element of the *Aytes* test is not established because there is no causal connection between the truck and the injury. *See Aytes*, 332 S.C. at 33, 503 S.E.2d at 745-46. The truck was not an "active accessory" since it was not actively being used at the time of the accident but was parked. *See Aytes,* 332 S.C. at 33*,* 503 S.E.2d at 745-46. The truck, itself, was not actively involved in causing the injury; the trophy was the active agent in causing Lily Beth's injury. The truck was merely the site where Lily Beth was injured by another instrumentality. *See Peagler*, 368 S.C. at 164, 628 S.E.2d at 481. The factual circumstances of this case are similar to those in *Peagler* in which the injury – the fatal shooting of the mother—occurred within the confines of the truck while a gun was being removed from the truck, but the truck did not cause or contribute to the injuries. *See Peagler,* 368 S.C. at 156, 628 S.E.2d at 476. The injuries resulted from moving a loaded gun or, as in this case, from moving a trophy, not from the operation or use of the vehicle.

The third element of the *Aytes* test requires that "the vehicle was being used for transportation purposes at the time of the injury." *Peagler*, 368 S.C. 153, 159-60, 628 S.E.2d 475, 479 (citing *Aytes* 332 S.C. at 33, 503 S.E.2d at 745). As the admitted facts indicate, the truck was not being used for transportation purposes at the time of the accident. The trip was complete, the truck was stopped, and everyone in the truck— Mr. Bartkowiak, his son, and Lily

Beth—had disembarked from the vehicle. Lily Beth then went back to the vehicle to retrieve the item and struck or was struck by the trophy.

Under the *Aytes* test, all three elements must be established. On these admitted facts, the first and third elements of the test have not been established (the court need not examine the second element because there is no allegation of an act of independent significance that breaks the causal link between the vehicle and the injury). Therefore, the court finds that Lily Beth's injuries did not arise out of the "ownership, maintenance, or use" of Plaintiff's truck. S.C. Code Ann. § 38-77-140(A) (2009).

## IV. THE EFFECT OF EXCLUSION 9(D)

Plaintiff also argues that the Policy's Exclusion 9(d) excludes coverage for Lily Beth's injuries under these facts. Defendants ADP and Mr. Bartkowiak counter by stating that Plaintiff's argument is based on the notion that coverage ends when the vehicle is parked. ADP and Mr. Bartkowiak also argue that the exclusion negates Plaintiff's interpretation of its Contract. ADP and Mr. Bartkowiak further assert that exclusion 9(d) governs who is covered while "loading or unloading . . . property by anyone who is not **your** employee . . . ." [Entry #1-2, at 15] (emphasis supplied). They continue by arguing that the necessity for Exclusion 9(d) implies coverage for loading and unloading the vehicle and that this seeming inconsistency renders the policy ambiguous thereby necessitating a denial of the Plaintiff's Rule 12(c) motion. In addition, Ms. Wyatt argues that Exclusion 9(d) violates § 38-77-140(A) because it is inconsistent with language in that statute requiring that the Policy "contain[] a provision insuring the persons defined as insured against loss from the liability . . . ." S.C. Code Ann. § 38-77-140(A) (2009).

13

First, the Policy does include language insuring the "insured" against loss from liability because the Policy's declarations make it clear that ADP is the insured. [Entry #1-2, at 2-7]. For this reason, the Policy and Exclusion 9(d) are consistent with § 38-77-140(A). Furthermore, contrary to the argument of ADP and Mr. Bartkowiak, the exclusion does not govern "who" is covered, but "what" is not covered. The exclusion's heading reads "**Bodily injury** or **property damage** resulting from:" and makes it clear that it outlines what, not who, is covered. [Entry #1-2, at 15]. The provision excludes all bodily injury (which is what Lily Beth suffered) that results from the movement (either the trophy moved or Lily Beth moved it), loading, or unloading (Lily Beth was engaged in retrieving her personal belongings from the truck) of property (both the trophy and her personal item qualify as property), but then excepts from exclusion any bodily injury resulting from such activity, if the activity is being carried out by one of three types of persons: an "employee, a renter, or borrower . . . ." [Entry #1-2, at 15]. It is undisputed that Lily Beth, the person initiating or doing the activity – movement, loading or unloading of property— was not an employee of ADP or anyone else. She was not a renter or borrower of the truck. She was Mr. Bartkowiak's minor daughter. Thus, the exclusion, by its terms, precludes liability coverage for Lily Beth's actions.

## V. UNINSURED OR UNDERINSURED MOTORIST COVERAGE

When liability coverage is inapplicable, as set forth in sections I and II above, a vehicle may be deemed an "uninsured motor vehicle" for purposes of coverage, thus invoking the possibility that uninsured motorist coverage exists for the accident. *Cf. Unisun Ins. Co. v. Schmidt*, 339 S.C. 362, 367, 529 S.E.2d 280, 282 (2000) (finding that uninsured motorist coverage for vehicle applied even though insurer successfully disclaimed liability coverage on

the basis of non-permissive use). In this case, if Plaintiff successfully excludes liability coverage for the accident on the grounds set forth above, or for other reasons, the truck would then meet the fourth definition of an "uninsured motor vehicle" in the policy, which is a land motor vehicle which had liability coverage that is successfully denied by the insuring company. [Entry #1-2, at 20].

Assuming, arguendo, Lily Beth is an "insured" for uninsured motorist coverage, the Policy again requires that the damage "be caused by the ownership, maintenance or use" of the uninsured or underinsured vehicle. [Entry #1-2, at 20]. The analysis of this issue is the same as discussed above for liability insurance; it is governed by the same three part test set forth in *Peagler*. *See State Farm Fire & Cas. Co. v. Aytes*, 332 S.C. 30, 503 S.E.2d 744 (1998) (applying test to claim for uninsured motorist coverage); *Doe v. S.C. Budget & Control Bd.*, 337 S.C. 294, 523 S.E.2d 457 (1999) (applying test to liability coverage); *State Farm Mut. Auto. Ins. Co. v. Bookert*, 337 S.C. 291, 523 S.E.2d 181 (1999) (applying the test to underinsured motorist coverage claim). For the reasons set forth above, any claim of Lily Beth for uninsured motorist coverage fails. The truck was not the cause of the injury because it was not an active accessory to her injury. It was, from the admitted facts, merely the site of the injury. Further, the truck was not being used for transportation purposes at the time of the accident.

Moreover, underinsured motorist coverage would only apply if it were found that there was liability coverage and such coverage was inadequate to cover Lily Beth's damages. As set forth above, there is no liability coverage because the three-part test in *Peagler* is not met, liability coverage is expressly excluded for loading and unloading of the vehicle, and Mr. Bartkowiak and ADP are not insureds for such coverage on these admitted facts. Because there is

no liability coverage and the three-part "ownership, maintenance and use" test is not met, (applying test to underinsured motorist coverage claims), there is no underinsured motorist coverage available for this accident. *See Bookert*, 523 S.E.2d at 181.

## CONCLUSION

For the reasons discussed above, the court declares that Plaintiff's insurance policy does not provide liability, uninsured motorist, or underinsured motorist coverage for any of the Defendants or the injury alleged herein. Furthermore, Plaintiff has no duty to defend or indemnify ADP or Mr. Bartkowiak for the claims asserted in this matter. Therefore, Plaintiff's Motion for Judgment on the Pleadings is **GRANTED**.

**IT IS SO ORDERED**.

s/ J. Michelle Childs<br>U.S. District Judge

October 19, 2010
Greenville, South Carolina